DIOPTRON COMPANY, a partnership, Milwaukee, Wisconsin, appellant, v. JESSE G. DIMMITT et ux., appellees.

No. 48394.

(Reported in 62 N.W.2d 749)

FEBRUARY 9, 1954.

Bailey C. Webber, of Ottumwa, for appellant.

Burn Bannister, of Ottumwa, for appellees.

WENNERSTRUM, J.—Plaintiff originally brought an action on an account against Jesse G. Dimmitt, a claimed nonresident of

Wapello County. In a later amendment the plaintiff joined L. Marie Dimmitt, wife of Jesse G. Dimmitt as a defendant, and also a claimed nonresident, and attached an interest in certain real estate. In this amendment it was asked that a conveyance from Jesse G. Dimmitt to L. Marie Dimmitt be set aside as it was claimed it was a voluntary deed and had been executed for the purpose of fraudulently defeating plaintiff as a creditor of Jesse G. Dimmitt. Mrs. Dimmitt filed a motion to transfer the issues raised by the claim of a fraudulent conveyance to the equity court for trial. This motion was sustained and the trial court heard the equitable issues. At the conclusion of the plaintiff's evidence the trial court sustained the motion of the defendant L. Marie Dimmitt to dismiss plaintiff's amendment to the petition. The plaintiff has appealed.

The real property here involved is a residence property in Ottumwa, Iowa. A one-half interest therein was inherited by Jesse G. Dimmitt and his three brothers from their father subject to a life estate of Maggie I. Dimmitt, their mother. The remaining undivided one-half interest was owned by Maggie I. Dimmitt who died intestate on July 18, 1950. On August 10, 1950, the three brothers entered into a contract with Jesse G. Dimmitt wherein he agreed to buy the interest of the other heirs for $3500. Settlement with the three brothers was consummated by Jesse G. Dimmitt in connection with the final distribution of their mother's estate. On September 9, 1950, Jesse G. Dimmitt executed an assignment of the previously mentioned contract to his wife "in consideration of love and affection and one dollar." It is maintained L. Marie Dimmitt did not pay her husband the dollar referred to in the assignment. On March 7, 1951, Jesse G. Dimmitt received from his brothers a deed covering their interest in the property here involved. Thereafter Dimmitt executed a warranty deed to his wife dated March 10, 1951, and placed it of record on the same day. The consideration noted in this deed was "One Dollar and other valuable consideration."

Jesse G. Dimmitt during June and July of 1950 entered into some type of sales arrangement with the plaintiff and obtained from it a number of flytraps, thereby incurring the claimed indebtedness. On May 26, 1951, plaintiff filed a suit against the

defendant Jesse G. Dimmitt on its account and by the amendment previously referred to joined L. Marie Dimmitt as party defendant, therein claiming the deed dated March 10, 1951, was a voluntary conveyance and was without consideration. The plaintiff attached the equitable interest of Jesse G. Dimmitt in the real property here involved. The two defendants filed an answer demanding a jury trial on the account. The only matters here involved pertain to the issues raised by the equitable action.

Prior to her death Maggie Dimmitt, the mother, was advanced in age and required considerable care. It is the claim of L. Marie Dimmitt that in consideration of the promise of Jesse G. Dimmitt to transfer to her all his share in the estate of Maggie Dimmitt she agreed to and did care for Maggie Dimmitt in her home. The record discloses that L. Marie Dimmitt rendered services in connection with the care of Maggie I. Dimmitt from July 1947 to May 1950. It is also disclosed a guardian was appointed for Maggie Dimmitt on August 9, 1948, and on September 4, 1948, the guardian was authorized to employ L. Marie Dimmitt and Jesse G. Dimmitt to continue to provide care for Maggie Dimmitt. This agreement was terminated on May 1, 1950, and on or about that time they received notice to leave the home of Maggie Dimmitt. It was also shown the guardian paid to the Dimmitts a total of $4600 for these services. It should be here noted that prior to the guardianship and in June 1948 Maggie Dimmitt entered into a contract with Jesse G. Dimmitt wherein she conveyed to him title to a property other than the one here involved and further agreed to pay her expense in the home residence and also agreed to pay L. Marie Dimmitt $10 per week. This contract was set aside by agreement about the time the guardianship proceeding was instituted.

During the trial L. Marie Dimmitt was called as a witness for the plaintiff. In the cross-examination of her, defendants' counsel sought to elicit the nature of the contract and arrangement at the time of the beginning of the care of Maggie Dimmitt by L. Marie Dimmitt as bearing upon the consideration for the conveyance to her. Objections were made by the plaintiff on the grounds the testimony sought to be given, and which was later

testified to, was not proper cross-examination. Other issues are involved and will be commented upon later in the opinion.

The plaintiff asserts as grounds for reversal (1) that its attachment lien was sufficient to support an equitable action by it as a creditor, (2) that the conveyance by Jesse G. Dimmitt to L. Marie Dimmitt was a voluntary conveyance and is presumed fraudulent as against existing creditors, (3) that there was no competent evidence in the record that there was any good and sufficient valuable consideration to support the deed to L. Marie Dimmitt as against the claims of the plaintiff as an existing creditor, and (4) that the defendant L. Marie Dimmitt failed to sustain the burden upon her to show Jesse G. Dimmitt retained sufficient property in his own name to pay existing creditors.

■ I. Plaintiff's attachment lien on the real property justified the bringing of and supports the equitable action brought by it, a creditor, to establish a lien on land claimed to have been fraudulently conveyed. Our statute so provides. Section 639.38, 1950 Code, is as follows:

"Lien acquired—action to determine interest. The plaintiff shall, from the time such property is taken possession of by the officer, have a lien on the interest of the defendant therein, and may, either before or after he obtains judgment in the action in which the attachment issued, commence action by equitable proceedings to ascertain the nature and extent of such interest and to enforce the lien."

And in Somers v. Spaulding, 229 Iowa 432, 435, 294 N.W. 610, 611, 133 A. L. R. 1300, we quoted from Mickel v. Walraven, 92 Iowa 423, 60 N.W. 633, as follows: " '* * * Before he could institute his action to subject the land to the payment of his claim, he must have had a lien upon it either by attachment or judgment [citing cases].' "

And at page 439 of 229 Iowa, page 613 of 294 N.W., it is further stated: "There is a dispute among the authorities on this question, whether a judgment is the exclusive method of accruing a right to set aside a conveyance as fraudulent. In discussing such conflict it is stated in 24 American Jurisprudence 309, as follows, 'The trend of the recent decisions, however, is in favor

of the view that where a valid lien has been obtained by attachment, a bill in equity to set aside a fraudulent conveyance may be maintained without a judgment.' This trend of the recent decisions is in accord with repeated pronouncements of this court."

We hold plaintiff's procedure was proper.

II. The most vital question presented as a ground for reversal relates to the cross-examination of L. Marie Dimmitt called as a witness for the plaintiff. In her direct testimony she testified that at the time she received the deed she did not give her husband the dollar mentioned in it, she did not deliver or transfer to him any real or personal property and between September 9, 1950, and March 10, 1951, nothing of value passed from her to Mr. Dimmitt.

During the cross-examination of this witness she testified over objections that the questioning and her testimony were not proper cross-examination and that her testimony is void and incompetent under the statute of frauds to the effect the valuable consideration consisted of the care of Mr. Dimmitt's mother for two and a half years and that her husband offered to her his entire share in the Dimmitt estate if she would perform these services. She also testified she was reluctant to do so as the care of Maggie Dimmitt was difficult and she previously had several housekeepers who had given up the work in the home. There were several other questions and answers of a similar nature.

The trial court in its written opinion stated that by the direct examination plaintiff sought to show there was no consideration for the deed. It held it was proper to show by cross-examination what the real consideration was. With this holding we are in accord.

In Jones v. Lozier, 195 Iowa 365, 372, 191 N.W. 103, 106, we stated: "The right to pertinently cross-examine a witness is not a matter of the trial court's discretion. It is a valuable right, essential to a fair trial upon any issue of fact, and prejudice will be presumed from its arbitrary denial."

In the instant case the questions asked avoided the matter of consideration but left an inference that there was none. And to the extent shown it made out a prima-facie case of lack

of consideration. However, we have held where by the testimony of a witness a prima-facie case is established it creates a presumption or inference as to the existence of a fact not directly testified to and a witness may be cross-examined to rebut such prima-facie proof, presumption or inference. Eno v. Adair County Mut. Ins. Assn., 229 Iowa 249, 257, 294 N.W. 323, and authorities cited. Inasmuch as the plaintiff in its brief and argument contends it made out a prima-facie case on the issue of lack of consideration, the last cited case seems particularly applicable.

The matter of limiting cross-examination is largely within the discretion of the trial court. We hold there was no abuse of discretion in the instant case. We have considered the authorities cited by the plaintiff but do not consider them controlling or applicable.

III. In connection with the objections made relative to the evidence given by L. Marie Dimmitt, plaintiff then claimed and on appeal asserts this testimony was incompetent under the Statute of Frauds. Sections 622.32, 622.33, 1950 Code. This is not an objection the plaintiff can assert under the circumstances. In 49 Am. Jur., Statute of Frauds, section 594, page 901, it is stated:

"The rule that the defense of the statute of frauds is a defense personal to parties to the contract and their privies and cannot be invoked by third persons for their own benefit when the parties to the contract are willing to waive the requirements of the statute applies as well to creditors of a party as to any other strangers to the contract."

We have held no one but the parties to the transaction may rely upon the statute of frauds. In re Estate of Lamb v. Morrow, 140 Iowa 89, 96, 117 N.W. 1118, 18 L. R. A., N. S., 226; Osborne v. Osborne, 196 Iowa 871, 874, 195 N.W. 586; Shedenhelm v. Cafferty, 174 Iowa 195, 199, 156 N.W. 340.

IV. The plaintiff assumes it has shown the conveyance by deed to L. Marie Dimmitt was a voluntary one. The defendants on the other hand maintain the burden is on the plaintiff to prove the conveyance was a voluntary one and it had failed to meet this burden. In the case of First National Bank v. Currier, 218 Iowa 1041, 1045, 256 N.W. 734, 737, this court stated:

"In a case where actual fraud is alleged as the basis for setting aside a conveyance, and the deed purports a consideration, the burden of proving lack or insufficiency of consideration, or that the grantee has acted in bad faith, is upon the creditor, even when the grantor is insolvent [citing cases].

"The deed, as before indicated, purports to be based upon a consideration. Therefore, the burden of proof is upon the appellant, and not the appellees, to show the inadequacy of the consideration as well as to show the bad faith of the grantee [citing cases]."

Other cases which support the cited case are: Bartlett v. Webber, 218 Iowa 632, 636, 252 N.W. 892; Crenshaw v. Halvorson, 183 Iowa 148, 152, 165 N.W. 360; Williams Savings Bank v. Murphy, 219 Iowa 839, 841, 844, 259 N.W. 467; Knabe v. Kirchner, 228 Iowa 1156, 1167, 293 N.W. 433.

V. There are some circumstances shown by the record that might arouse suspicion regarding the conveyance to the wife. However, mere ground for suspicion is not sufficient to warrant setting aside a claimed fraudulent conveyance. To justify such action the issue of bad faith and fraud must be clear, satisfactory and convincing. Knabe v. Kirchner, supra, at page 1171 of 228 Iowa, page 440 of 293 N.W.

VI. The most substantial evidence presented by the plaintiff on the question of lack of consideration and the issue of a fraudulent conveyance is found in the direct testimony of L. Marie Dimmitt. This evidence is particularly weakened or nullified by her cross-examination. We are convinced the claimed fraud and lack of consideration were not proved in the manner required under the authorities cited. We therefore affirm the trial court's dismissal of plaintiff's action.—Affirmed.

All JUSTICES concur.