MONONA COUNTY, IOWA, appellant, v. MICHAEL J. SCHOENHERR et al., appellees, FIRST STATE BANK, Mapleton, Iowa, intervenor-appellee.

No. 49951.

(Reported in 105 N.W.2d 91)

SEPTEMBER 20, 1960.

Sewell E. Allen and Robert M. Underhill, both of Onawa, for appellant.

Fred H. Free, of Sioux City, and Francis L. Free, of Hinton, for appellees.

HAYS, J.—Plaintiff, owner of a judgment against Elizabeth and Michael Schoenherr dated March 7, 1955, seeks to set aside

a conveyance by Elizabeth and Michael Schoenherr of 160 acres of land in Monona and Woodbury Counties, Iowa, to their son and daughter-in-law, Paul N. and Mary Ann Schoenherr, under date of September 4, 1954. The petition alleges actual fraud upon the part of both the grantors and grantees in that said conveyance was voluntary, wholly without consideration, and made with specific intent on the part of both parties, to hinder, delay and defraud plaintiff. The trial court found the conveyance was based upon a good and sufficient consideration and that no mutual fraud or bad faith was established. Plaintiff's petition was dismissed and it appeals.

■ I. This is not a case where a constructive fraud is alleged based upon a confidential or fiduciary relationship between grantor and grantee; the relationship of parent and child being of no primary importance other than a circumstance to be considered as bearing upon the alleged fraud. Under the authorities, where an actual fraud is alleged, the burden rests upon the plaintiff to establish the same by clear and satisfactory proof, a mere suspicion not meeting such burden. Tullis v. Tullis, 235 Iowa 428, 16 N.W.2d 623; Dunlop v. Hemingway, 245 Iowa 696, 63 N.W.2d 901; Dioptron Co. v. Dimmitt, 245 Iowa 450, 62 N.W.2d 749; 37 C. J. S., Fraudulent Conveyances, section 423.

■ ■ II. The case being in equity is heard de novo on appeal and while the findings of the trial court are carefully considered such are not conclusive on appeal. Snater v. Walters, 250 Iowa 1189, 98 N.W.2d 302. Whether or not a conveyance amounts to a fraud depends upon the facts of each transaction and precedents are of little value. Hatheway v. Hanson, 230 Iowa 386, 297 N.W. 824.

■ Paul Schoenherr has always lived upon the land in question which, prior to the conveyance in question, was owned by his parents. From 1940 to 1946 he farmed the land under a partnership agreement with them. In 1946 he married, his parents moved from the farm and he and his wife resided thereon under a crop share-cash rental basis. The deed in question states the consideration to be $17,940 and was filed for record on September 7, 1954. Elizabeth and Michael Schoen-

herr have a daughter who has been an inmate of the Mental Health Clinic at Cherokee, Iowa, for some time. About August 6, 1954, request was made by Monona County authorities that they reimburse the county for her care in said institution. On August 30, 1954, Michael, Paul and an attorney met with the Board of Supervisors of Monona County relative to this claim. Michael stated he was heavily in debt due to illness of his wife and could not pay the bill. Paul offered to compromise the bill for $1000 which was refused. Nothing was said at this meeting of any debts due Paul by Michael. On September 4, 1954, Orval Spahn, vice president of the First State Bank of Mapleton which held a mortgage against the farm for $4000, at the request of Michael prepared the deed in question and that evening witnessed its execution at Michael's home in Mapleton. As a part of the alleged consideration was Paul's assumption of the $4000 mortgage, a new mortgage was prepared and signed by Paul and his wife. It has since been increased to $6500. Testimony as to the value of the farm on September 4, 1954, ranged from $120 to $150 per acre. Such is the entire record upon behalf of the plaintiff.

Paul Schoenherr was the sole witness for the defendants. He does not dispute the above stated facts but, in addition thereto, stated: On September 1, 1954, his father, Michael Schoenherr, came to him and said " 'I have got a lot of debts, I don't see how I can pay you, so would you take the place over for what I owe you, and you pay the mortgage there that is on the place' ?"; that he said "Well I would like to think it over for a couple of days, and I am busy right now." On September 4, 1954, he and his father discussed the indebtedness and estimated it to be about $12,000 to $13,000, according to the checks he had. He told his father he would take the place and his father had the papers prepared. Upon the consideration question he stated that since 1940, when he first took over the farming of the land, he had paid his father the rentals due to him; that since that time he has paid loans made to his father, taxes on the land, made permanent improvements thereon, and purchased many items, such as seed and fertilizer, which his father was obligated to provide; that such expenditures were

made upon the father's request and statement that he would pay him for them. In support of such expenditures he produced some 100 checks, totaling $12,414.36. He also claims wages of $1.25 an hour for thirty working days on account of carpenter work he did about the place. The total sum, including the $4000 mortgage which he assumed, being about $16,700. While many of these checks did not bear notations as to what they were for, they were payable to a lumber company, a paint store, or electric supplier, indicating they were for materials such as would be used about a farm and he so identified them.

 III. Three of the four propositions relied upon for a reversal are predicated upon the court's finding that the transfer was made for a good and valid consideration. It is urged that $5648.53 of the total alleged expenditures were made more than five years prior to the deed, are outlawed and cannot be considered. Such is not the law. If the debtor chose to reject his defense of the statute of limitations, assuming such to have been available to him, such rejection might be a factor bearing upon the question of fraud but would not affect the legality of the amount thus involved. 37 C. J. S., Fraudulent Conveyances, section 185; Fitzgerald v. Flanagan, 155 Iowa 217, 135 N.W. 738, Ann. Cas. 1914C 1104. It is also urged that the checks were not properly identified and should not have been considered by the trial court. While it is true as to the items for which the checks were given, they were in some instances identified upon recollection and belief, such goes to the weight and not the competency of the evidence. The trial court had before it not only the evidence which appears in the record before us but the witnesses themselves, which we do not. Such is often a cogent and vital factor in determining a question of fact. Based upon our own examination of the record we are satisfied with the trial court's findings that the deed was based upon a valid and sufficient consideration.

 IV. Finally it is urged that the trial court erred in finding there was no mutual fraud shown. We assume under the record that grantors were insolvent, at least after the execution of the deed. It must be conceded that Paul Schoenherr, by taking the deed, received preference over other creditors of

his father. It may also be assumed, but we do not so find, that the grantors made the deed with intent to hinder, delay and defraud other creditors including the plaintiff. While the above matters are factors to be considered upon the question of fraud they are not alone determinative, such as to require a cancellation of the deed. Kroll v. Kirchner, 228 Iowa 1156, 293 N.W. 433; Hatheway v. Hanson, 230 Iowa 386, 297 N.W. 824; Terre Haute Brewing Co. v. Linder, 233 Iowa 359, 7 N.W.2d 16. Appellant still has the burden of showing grantee's intentional participation therein. Not only has it failed to do such by clear and satisfactory evidence, but the testimony of the defendant, if believed, clearly dispels any suspicions that appellant's evidence may have aroused. The idea of the transfer came from the grantor, not the grantee; grantee canceled an indebtedness of more than $12,000 and assumed a new debt of $4000; it was done only after a few days thought upon the proposition. We think the record shows good faith upon the part of the grantee to protect himself and that the appellant has failed to carry its required burden of proof.

The decree of the trial court is affirmed.—Affirmed.

All JUSTICES concur except OLIVER, J., not sitting.