Doug CONKLIN, Plaintiff,

v.

IOWA DISTRICT COURT FOR SCOTT COUNTY, Defendant.

No. 90–1487.

Supreme Court of Iowa.

March 18, 1992.

Thomas J. Yeggy, Davenport, for plaintiff.

Michael J. McCarthy of McCarthy & Lammers, Davenport, for defendant.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, CARTER, and SNELL, JJ.

SCHULTZ, Justice.

The issue in this case is whether a bankrupt who has received a bankruptcy discharge may recover uncondemned funds (the funds) held by the district court clerk pursuant to a judgment creditor's prebankruptcy garnishment of the bankrupt's wages. After receiving a bankruptcy discharge, Doug Conklin sought return of the funds on the basis that the funds represented his interest in accrued wages on the date he filed a bankruptcy petition and were exempt property pursuant to Iowa Code section 627.6(9)(c) (1989). The district court ruled that Conklin waived any right to claim the funds and condemned the funds in favor of the judgment creditor. The district court's ruling was based on its finding that Conklin had not listed the funds either as an asset of the bankruptcy estate or as exempt property. Conklin applied for a writ of certiorari to challenge the district court's ruling. We agree with

the district court's ruling but for different reasons. Consequently, we annul the writ.

In 1987, Walter J. House (House) filed a transcript of a foreign judgment he had received against Doug Conklin in the office of the clerk of court for Scott County. In January 1988, House garnished Conklin's employer who surrendered Conklin's non-exempt wages to the sheriff. These garnished wages were promptly condemned and applied to House's judgment against Conklin.

In January 1989, House again garnished Conklin's employer. The employer again paid to the sheriff Conklin's nonexempt wages. In this second garnishment proceeding, House did not condemn the garnished wages promptly. As a result, the garnished wages have been held as uncondemned funds by the district court clerk since March 29, 1989.

On December 5, 1989, Conklin filed a petition for relief under Chapter 7 of the United States Bankruptcy Code (Bankruptcy Code). Conklin was required by 11 U.S.C. section 521(1) (1988), of the Bankruptcy Code to submit a schedule of his assets and liabilities. However, Conklin did not claim the funds held by the clerk of the district court as an asset of the bankruptcy estate or as exempt property under Iowa Code section 627.6(9)(c) in any of the statements and schedules submitted with his bankruptcy petition. On June 12, 1990, Conklin received a discharge of his debts, and on June 19 Conklin filed an application for return of the garnished funds in the possession of the district court.

■ As we indicated previously, the district court ruled that Conklin had "waived any right to claim these funds as exempt or as wages in which he still has some interest." The court based its ruling on Conklin's failure to report the garnished wages in his bankruptcy petition. We agree with the district court's ruling and believe that Conklin's failure to identify the funds in his bankruptcy petition estopped him from asserting title to the funds. *See In re Mahan*, 104 B.R. 300, 301–02 (Bankr.E.D.Cal. 1989) (debtor who failed to file accurate statements regarding assets estopped from objecting to postdischarge claims of creditors); *In re Roberts*, 81 B.R. 354, 363 (Bankr.W.D.Pa.1987) (debtor barred from claiming as exempt any property omitted from bankruptcy schedules of exemptions); *In re Medley*, 29 B.R. 84, 86–88 (Bankr. M.D.Tenn.1983) (title to expected income tax refund does not revest in debtor after bankruptcy case closed if debtor failed to list refund as asset of estate in bankruptcy schedules).

■ Conklin contends that if we decide the garnished funds were not properly scheduled in his bankruptcy petition, then the funds become property of the bankruptcy estate and cannot be applied to House's state court judgment. *See* 11 U.S.C. § 554(d) (property of estate not abandoned or administered while bankruptcy case open remains property of estate after case closed). We disagree with Conklin's contention. It is true that after a bankruptcy case is closed, unscheduled property may remain as property of the estate and be subject to distribution to creditors who were a part of the bankruptcy proceedings. *See Miller v. Shallowford Community Hosp., Inc.*, 767 F.2d 1556, 1560 (11th Cir.1985) (cause of action not listed in schedule of assets denied to debtor and remains property of estate available to creditors upon reopening of bankruptcy case); *In re Benefield*, 102 B.R. 157, 159 (Bankr.E.D.Ark.1989) (debtor's interest in real property not disclosed in bankruptcy schedules remains property of estate after bankruptcy case closed subject to postdischarge claims of creditors); *see also* 4 William M. Collier, *Collier on Bankruptcy* § 554.03 (15th ed. 1991) (stating that formally unabandoned, unadministered, unscheduled property remains property of estate unless court orders otherwise).

■ We believe this case is different from *Miller* and *Benefield* in that neither Conklin nor his creditors have a right to the funds because the garnishment proceedings provided House a valid prepetition lien on the funds. The acquisition of liens is governed by state law, not the federal Bankruptcy Code. Thus, our determination is based on Iowa statutory law. Iowa

Code section 642.13 (1989), provides that if "the garnishee has delivered to the sheriff [the debtor's] money or property [the] [p]roperty so delivered shall thereafter be treated as if levied upon under the writ of attachment...." Iowa Code chapter 639 governing attachment provides as follows:

> The plaintiff shall, from the time such property is taken possession of by the officer, have a lien on the interest of the defendant therein, and may, either before or after the plaintiff obtains judgment in the action in which the attachment issued, commence action by equitable proceedings to ascertain the nature and extent of such interest and to enforce the lien.

Iowa Code § 639.38 (1989). Applying these two statutes to this case, we conclude that under Iowa law House acquired a lien against the funds at the time the sheriff took possession of Conklin's wages in March 1989, approximately eight months prior to the filing of Conklin's bankruptcy petition. Consequently, we conclude that House had a valid prepetition lien against the funds and that the district court properly condemned the funds in favor of House.

Conklin further argues that the district court was prohibited from condemning the funds after he had received a bankruptcy discharge. In support of this contention, Conklin relies on 11 U.S.C. section 524(a)(2), which prohibits "continuation of an action ... to collect ... any ... debt as a *personal liability* of the debtor ..." (emphasis added) after a debtor has received a bankruptcy discharge. He argues that the condemnation proceedings were the continuation of an action to collect the debt he owed House.

■ Section 524 of the Bankruptcy Code has caused some confusion. This confusion has been clarified in the case law, which has distinguished in rem liability from the prohibition against determinations of "personal liability" in section 524(a)(2). A discharge in a bankruptcy case voids any judgment to the extent that the judgment is a determination of the debtor's personal liability and an attempt to collect the judgment from the debtor personally. How-

ever, a bankruptcy discharge does not protect the debtor from in rem liability nor prevent enforcement of an unavoided, valid prepetition lien on either the debtor's exempt or nonexempt property. *See In re Hagemann*, 86 B.R. 125, 126–27 (Bankr. N.D. Ohio 1988) (discharged debtor protected from in personam liability but not from in rem liability on unavoided valid lien); *Triangle Refineries, Inc. v. Brua*, 364 N.W.2d 863, 865 (Minn.Ct.App.1985) (discharge in bankruptcy releases bankrupt from personal liability but does not annul lien obtained from judgment which attached to debtor's property prior to bankruptcy filing); 3 William M. Collier, *Collier on Bankruptcy* § 524.01[3], at 524–17 to –18 & nn. 17b–20 (15th ed. 1991) (construing 11 U.S.C. section 524(a) and discussing its legislative history); *see also Noble v. Yingling*, 29 B.R. 998, 1001 (Bankr.D.Del. 1983); *In re Dickinson*, 24 B.R. 547, 550 & n. 3 (Bankr.S.D.Cal.1982); *First State Bank v. Zoss*, 312 N.W.2d 127, 127–28 (S.D. 1981); *Moad v. Neill*, 451 N.W.2d 4, 8 (Iowa App.1989).

■ Conklin also asserts that *In re Yetter*, 112 B.R. 301 (Bankr.S.D. Iowa 1990), supports his contention that the district court's condemnation of the garnished funds violated section 524(a) of the Bankruptcy Code. In *Yetter*, the court held that an action to condemn garnished funds violated the automatic stay provisions in 11 U.S.C. section 362(a) of the Bankruptcy Code. *Id.* at 304. Conklin argues that the postdischarge condemnation in this case was "similarly" a violation of 11 U.S.C. section 524(a) and should not be allowed. We believe that the automatic stay in bankruptcy cannot be analogized to the postdischarge period. The automatic stay prohibits enforcement of any prepetition lien until the bankruptcy case is either closed, dismissed, or a discharge is granted. *See* 11 U.S.C. §§ 362(a), 362(c)(2). Here, a discharge was granted on June 12, 1990; thus, the automatic stay was no longer in effect and postdischarge enforcement of valid prepetition liens was no longer prohibited under the case law authority previously cited. Moreover, unlike Conklin, the

debtor in *Yetter* had properly claimed the wages as exempt property on his bankruptcy schedule of exemptions and the bankruptcy court found that the garnished wages were entitled to exempt status. *Yetter*, 112 B.R. at 302–03. Thus, *Yetter* is not applicable to this case and Conklin's contention has no merit.

Conklin alternatively argues that if he is entitled to the garnished funds as an exemption, then House's lien can be avoided under 11 U.S.C. section 522(f)(2) as impairing an exemption to which he was entitled. As we indicated earlier, we agree with the district court's conclusion and the case law authority cited previously that Conklin is estopped from claiming the garnished funds as an exemption because of his failure to include them in his bankruptcy schedules. Thus, Conklin's argument that House's lien can be avoided under Section 522(f)(2) as impairing an exemption to which he is entitled is inappropriate.

In conclusion, we hold that House had a valid prebankruptcy lien upon the garnished funds surrendered by the garnishee, Conklin's employer. Conklin was unable to show that he possessed title to the funds or that the funds qualified as a bankruptcy exemption. House's lien was not otherwise affected by the bankruptcy proceedings. Therefore, House was entitled to condemn the funds held by the district court clerk and to apply them to his judgment against Conklin.

WRIT ANNULLED.