Cynthia GARTON, Appellant,

v.

Gilbert GARTON, Executor of the Estate of George R. Garton; Richard C. Garton; Security Bank of Kansas City; George R. Haydon, Jr., Personal Representative of the Estate of Edwin C. Borserine, Deceased, Appellees,

and

Alice Cockrell, Appellant.

No. 93–1940.

Supreme Court of Iowa.

June 21, 1995.

Carlton G. Salmons of Austin, Gaudineer, Austin, Salmons & Swanson, Des Moines, for appellant Cynthia Garton.

Steven C. Jayne, Des Moines, for appellant Alice Cockrell.

Thomas M. Cunningham of Shearer, Templer, Pingel & Kaplan, P.C., West Des Moines, for appellee George R. Haydon, Jr.

James D. Meyer of the Meyer Law Firm, Chariton, for appellee Gilbert Garton.

John E. Orell, Jr., and Hugh J. Cain of Hopkins & Huebner, P.C., Des Moines, for appellee Security Bank.

Richard C. Garton, pro se, Pittsburg, Kansas.

Considered by LARSON, P.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

NEUMAN, Justice.

This is a dispute among creditors over their right to claim some portion of defendant Richard Garton's inheritance. Plaintiff Cynthia Garton, Richard's former wife, petitioned for a creditor's bill lien to enforce her judgment for unpaid spousal and child support. Ruling by way of summary judgment, the district court found that Cynthia's lien against Richard's beneficial interest was inferior to claims already established in the proceeds by Richard's other creditors, defendants George R. Haydon, Jr. and Security State Bank. We affirm.

I. *Background Facts and Proceedings.*

Cynthia and Richard Garton were formerly husband and wife. In October 1985, they borrowed $165,000 from Security Bank of Kansas City (hereinafter "Security Bank") secured by a deed of trust on jointly owned real estate. When the Gartons defaulted on the payments, Security Bank foreclosed the deed of trust and ultimately obtained a deficiency judgment against them in the sum of $110,000.

Richard Garton was also indebted to George R. Haydon, Jr., personal representative of the estate of Edwin C. Borserine, from whom Richard had borrowed $25,000. In May 1988, Haydon secured a judgment against Richard for the principal sum with interest. The judgment was registered in the Iowa District Court for Lucas County pursuant to the Iowa Uniform Enforcement of Foreign Judgments Act. *See* Iowa Code ch. 626A (1993).

Contemporaneously with these financial difficulties, the Gartons' marriage deteriorated. A Nebraska decree of divorce was filed January 8, 1990. Under the decree, Cynthia was awarded alimony and child support for

the parties' two sons. Richard has not fulfilled this obligation, and at least $27,000 remains unpaid. The decree also ordered Richard to hold Cynthia harmless for the debts to Security Bank and Haydon.

Also in January 1990, Richard's father, Gordon Garton, died. As one of three heirs, Richard stood to inherit one-third of a gross estate totaling $900,000. He immediately negotiated a promissory note to the Hawkeye Bank in Chariton for a short-term loan of $125,000, giving as security an assignment of his beneficial interest in his father's estate.

Meanwhile, under a duly executed garnishment on Haydon's judgment, the sheriff of Lucas County, Iowa, garnished the executor of the Garton estate on April 20, 1990. Following notice to Richard and answer by the garnishee, the district court issued the following judgment and order condemning funds in the hands of the executor:

It is hereby ordered that so much of said funds or property of judgment debtor in the possession of garnishee as is necessary to and will pay the judgment herein in the amount of $25,000 with interest thereon at the per diem rate of $14.28 from the date below written is hereby condemned and appropriated for application on plaintiff's judgment. The garnishee is hereby ordered to turn over so much of said funds or property to the sheriff of Lucas County, Iowa, for delivery to the plaintiff/judgment creditor to satisfy said judgment in accordance with distribution schedules made by the Probate Court, and subject to the payment of federal and state taxes and expenses of administration.

When Security Bank learned of Richard's potential inheritance, it also sought to stake its claim. A settlement reached between Richard and the bank in August 1990 provided that the bank would release all claims against Richard and Cynthia upon the payment of $90,000. The payment would be made pursuant to a contemporaneous assignment of estate proceeds, executed by Richard, which included the executor's agreement to be bound by the assignment, "subject, however, to any superior claims of other creditors, or order of court directing the [executor] to do other than directed herein."

More than a year later, just days before the executor filed his final report seeking court approval of the foregoing distributions along with the expenses of administration, Cynthia Garton filed a petition for a creditor's bill lien. See Iowa Code §§ 630.16–.18. She sought a declaration that her Nebraska judgment for child support and alimony was entitled to full faith and credit in the Iowa district court; that she was entitled to a lien against Richard's undistributed share in his father's estate for the arrearage; and that her judgment was entitled to priority over those held by Richard's other creditors. Cynthia's mother, Alice Cockrell, filed a similar petition the following day based on a $30,000 judgment she had obtained against Richard on March 1, 1991.

After payment of taxes and administrative expense, Richard's anticipated share of the estate totaled no more than $120,000. Upon the agreement of all parties concerned, the district court entered an order delaying distribution until the priority of competing claims could be determined. Orders were entered permitting the necessary parties to be interpleaded. Various answers and cross-claims were filed. Discovery was undertaken and eventually motions for summary judgment were filed by Haydon and Security Bank. Following hearing, the district court granted the motions. It ordered distribution of available funds in this order: Haydon, Security Bank, Cynthia, and Alice Cockrell. This appeal by Cynthia, joined by Alice Cockrell, followed.

## II. Scope of Review.

Because Cynthia's petition was filed in equity, our review would ordinarily be de novo. See Iowa R.App.P. 4. As between Cynthia and Haydon, however, the parties concede there are no disputed issues of material fact. Thus the question is whether the district court properly entered judgment for Haydon as a matter of law. *Adam v. Mt. Pleasant Bank & Trust Co.*, 355 N.W.2d 868, 872 (Iowa 1984). As for the judgment favoring Security Bank, Cynthia claims the court's summary action was improper because a disputed fact issue exists over Cynthia's allegation of a fraudulent conveyance. Thus we

review that claim in the light most favorable to Cynthia's resistance. The question is whether the alleged factual dispute is material and, if not, whether the district court properly applied the law. *Ottumwa Hous. Auth. v. State Farm Fire & Casualty Co.*, 495 N.W.2d 723, 726 (Iowa 1993).

### III. *Issues on Appeal.*

Cynthia attacks the district court's decision on three fronts. First, she claims Haydon's lien was not properly perfected, thus rendering the garnishment and subsequent order condemning funds inferior to her own lien. She next claims that disputed facts surrounding Security Bank's assignment from Richard preclude summary judgment for the bank as a matter of law. She concludes with a public policy argument that her unpaid judgment for spousal and child support should take precedence over all competing judgments. We shall consider the arguments in turn.

A. *Haydon judgment.* Cynthia begins by claiming that any attempt by Haydon to garnish Richard's distributive share in the estate is prohibited by statute and at common law. The claim is entirely without merit.

■ Iowa Code section 642.1 grants judgment creditors the right to garnish an executor "for money due from decedent." This court long ago interpreted this statute as repealing the rule of *custodia legis,* a doctrine that formerly protected money or property in the hands of an executor from garnishment. *Boyer v. Hawkins,* 86 Iowa 40, 42–43, 52 N.W. 659, 659–60 (1892). This court specifically held in *Boyer* that the legislature intended by this repeal to permit an executor to "be garnished as to a legacy or distributive share." *Id.* at 43, 52 N.W. at 660. The court reaffirmed *Boyer* in *Geiger v. Gaige,* 105 N.W. 1007 (Iowa 1907). There this court characterized as "well-settled" the right of a judgment creditor to garnish an executor for the distributive share of a beneficiary. *Id.* at 1008.

The authority upon which Cynthia relies pertains solely to attempts by creditors to garnish an executor's *personal funds* for a decedent's debts, or attempts to garnish an estate for debts owed by the *decedent. See, e.g., Shepherd v. Bridenstine,* 80 Iowa 225, 226–27, 45 N.W. 746, 747 (1890); *Marion County Bank v. Smith,* 205 Iowa 203, 204–09, 217 N.W. 857, 858–59 (1928). Likewise the statute upon which Cynthia relies, Iowa Code section 633.430, speaks to the question of levy and execution under any judgment "against a decedent or personal representative." It simply has no application to the garnishment of funds due a distributee.

■ Cynthia next contends that Richard's January 1990 assignment to Hawkeye Bank of "all right, title and interest" in the estate of George Garton effectively exhausted the funds available to Haydon for garnishment in April 1990. She rightly notes that garnishment is effective only to the extent of a person's interest in the property garnished. *Van Maanen v. Van Maanen,* 360 N.W.2d 758, 761 (Iowa 1985). But, by its terms, Richard's assignment encumbered his distributive share only to the extent of his indebtedness to Hawkeye Bank. At the time the security was given, Richard's undistributed share was anticipated to be $250,000. The remainder was available for encumbrance as Richard saw fit. Moreover, the debt to Hawkeye was fully repaid well in advance of the order condemning funds in the garnishment proceeding.

■ Finally, Cynthia points to Iowa case law that suggests a garnishment standing alone "creates no specific lien upon the property or money in the hands of the garnishee." *Watts v. Southern Surety Co.,* 216 Iowa 150, 155, 248 N.W. 347, 350 (1933); *see also Pierre v. Pierre,* 210 Iowa 1304, 1309–10, 232 N.W. 633, 635 (1930) (no lien is obtained by garnishment, only a right to proceed against the garnishee personally). *But see In re Aztec Concrete, Inc.,* 143 B.R. 537, 539 (Bankr.S.D.Iowa 1992); *In re Yetter,* 112 B.R. 301, 303 (Bankr.S.D.Iowa 1990) (holding as matter of Iowa law that garnishment creates lien as of date of service); *Conklin v. Iowa Dist. Court,* 482 N.W.2d 444, 446 (Iowa 1992) (garnishment proceedings constitute valid prepetition lien). She overlooks the fact, however, that Haydon rests his claim of

priority, not on the garnishment alone, but on the subsequent judgment and order which condemned so much of Richard's property in the garnishee's hands as would satisfy Haydon's debt plus accrued interest. This order condemning funds, secured more than one year before either Cynthia or Alice Cockrell filed their petitions to establish a creditor's bill lien, extinguished any right or interest Richard held in the funds so condemned as of the date of garnishment. *Kinart v. Churchill,* 210 Iowa 72, 75–76, 230 N.W. 349, 350 (1930).

We simply find unpersuasive Cynthia and Alice Cockrell's bare assertion that their creditor's bill liens, granted pursuant to Iowa Code section 630.18 upon filing of petitions under section 630.16, so perfected their claims as to grant them priority over Haydon's judgment as a matter of law. To the contrary, we believe equity dictates that the "priority by execution" rule applicable in the real property context should apply equally in the case of perfected executions on personalty. *See Kesterson v. Tate,* 94 Iowa 665, 63 N.W. 350, 351 (1895); *Lippencott, Johnson & Co. v. Wilson,* 40 Iowa 425, 427 (1875). The district court was correct in so ruling.

B. *Security Bank's assignment.* Cynthia's challenge to the judgment for Security Bank rests on her belief that a factual dispute exists over her claim that Richard's assignment to the bank was fraudulent and, therefore, invalid. She argues the controversy was not ripe for summary judgment. But reviewing the facts, as we must, in the light most favorable to Cynthia, we conclude that the court correctly ruled that no proof of fraudulent conveyance exists and thus Security Bank's assignment takes priority over Cynthia's subsequent filing as a matter of law.

■ It is true that fraud committed in the assignment of an inheritance, whether actual or constructive, will invalidate the assignment. *Klingensmith v. Klingensmith,* 193 Iowa 350, 354–55, 185 N.W. 75, 77 (1921). A fraudulent conveyance is one in which the debtor, with the intent to delay or defraud, seeks to place assets beyond the reach of creditors, to the prejudice of their legal or

equitable rights. *Graham v. Henry,* 456 N.W.2d 364, 366 (Iowa 1990).

■ In the absence of statutory regulation, however, a debtor may prefer one creditor over another. *First State Bank, Belmond v. Kalkwarf,* 495 N.W.2d 708, 712 (Iowa 1993); *Production Credit Ass'n of Midlands v. Shirley,* 485 N.W.2d 469, 472 (Iowa 1992). So long as the creditor acts in good faith to protect its own interest, and does not accept the conveyance with the purpose of aiding a debtor's fraudulent motives, a preferential transfer will be honored. *Shirley,* 485 N.W.2d at 472; *Rouse v. Rouse,* 174 N.W.2d 660, 668 (Iowa 1970).

■ Each claim of fraudulent conveyance must be decided upon its own peculiar facts. *Rouse,* 174 N.W.2d at 667. The decision must be informed by a review of all the circumstances surrounding the transaction. *Shirley,* 485 N.W.2d at 472. To aid that determination, this court has identified the following badges, or indicia, of fraud: (1) inadequacy of consideration for the transfer; (2) insolvency of the debtor; (3) pendency or threat of third-party litigation; (4) secrecy or concealment; (5) departure from the usual method of business; (6) reservation of benefits to the debtor; and (7) retention by the debtor of possession of the property. *Id.* It is important to note that fraud may not be presumed; it must be proven by clear and convincing evidence. *Id.* at 473.

■ Applying this law to the undisputed facts before us, we conclude—as did the district court—that no legal basis exists to set aside Richard's assignment to Security Bank. First, valuable consideration was given by both Richard and the bank in exchange for the assignment. *See First Nat'l Bank in Fairfield v. Frescoln Farms, Ltd.,* 430 N.W.2d 432, 435 (Iowa 1988). Entitled to recover $110,000 plus accrued interest on its deficiency judgment, the bank compromised and agreed to release both Richard *and Cynthia* upon payment of $90,000 out of Richard's inheritance.

Clearly Richard and the bank were not related by blood, nor does the record contain proof that Security Bank knew of any pending litigation involving Richard as a debtor.

At all times the property in question remained in possession of the executor, not Richard. Moreover, the bank's willingness to accept an assignment of future expectancy in satisfaction of debt does not depart from normal banking practices.

Cynthia makes much of the fact that she was not advised about the assignment, thereby suggesting the transaction was cloaked in secrecy and, hence, fraud. However, the law does not require that notice of assignment be given. *Broyles v. Iowa Dep't of Social Servs.*, 305 N.W.2d 718, 723 (Iowa 1981). The assignment was filed of record in Lucas County.

More important, Cynthia advances no reasonable claim that she was prejudiced by the conveyance. In return for the assignment, she was released from her obligation to Security Bank, a personal liability that existed irrespective of Richard's legal duty to hold her harmless on the debt. In the absence of any proof that Security Bank acted other than in good faith to protect its interest, the district court correctly recognized the superiority of its assignment from Richard as a matter of law.

■ C. *Public policy.* As a final proposition, Cynthia seeks to reverse the court's ruling on the premise that public policy favors the payment of child support obligations ahead of other debts. She cites both statutory and case law authority that she believes supports her claim. Her reliance on the authority advanced, however, is misplaced.

Cynthia first claims that Haydon's garnishment, even if valid, must be subordinated to her creditor's bill lien for unpaid child support in accordance with Iowa Code section 642.24. That statute reads:

> The court shall include in any order for garnishment a requirement that any amount garnished for the payment of a support obligation, whether or not the amount represents a current or delinquent support obligation, shall first be paid out of the garnished funds, after subtracting applicable fees related to the issuance of the specific garnishment, before any amounts garnisheed for other purposes are paid out of the garnisheed funds.

Iowa Code § 642.24. By its terms, the section provides for prioritization of funds generated within a particular garnishment. It does not, as Cynthia claims, compel the court to prioritize claims between competing creditors.

Section 642.24 presupposes garnishment by a creditor with multiple claims for different debts, among them unpaid support. In such a case, the statute makes plain that funds garnished must first be applied toward current or delinquent child support awards. But we find nothing in the language of section 642.24 to suggest that a court must review every garnishment order in light of other garnishment actions—not then before the court—which might seek to enforce the debtor's unsatisfied child support obligations. Such a requirement is neither compelled by the statute nor consistent with good sense.

As for Security Bank's assignment, Cynthia claims it should be set aside as violative of the public policy granting child support obligations the highest priority. In support she cites *In re Marriage of McMorrow,* 342 N.W.2d 73, 76 (Iowa 1982), wherein this court elevated a parent's obligation of support above her homestead rights, and *Anthony v. Anthony,* 204 N.W.2d 829, 832–34 (Iowa 1973), where this court voided a parental contract that relieved a former spouse from the obligation to provide support. In neither case, however, was the court concerned with the competing claims of third-party creditors. They are thus distinguishable from the case before us. *Cf. Smith v. Brown,* 513 N.W.2d 732, 734 (Iowa 1994) (holding husband's lien against homestead is assignable to third party, but not subject to wife's judgment for unpaid child support that accrued after assignment but before lien ripened).

There can be no doubt that our own legislature, and others, have wisely strengthened child support collection efforts in recent years. Moreover, neither judgment creditor disputes the fact that Richard has wrongly ignored his financial obligation to Cynthia and his sons. But neither beefed up legislation nor Richard's fiscal irresponsibility can justify the realignment of creditor priorities long established at common law. The right

first acquired is, as a rule, superior to those that follow. *Briley v. Madrid Improvement Co.*, 255 Iowa 388, 389–90, 122 N.W.2d 824, 825 (1963). Here both Haydon and Security Bank perfected their creditors' rights to Richard's inheritance long before Cynthia asserted hers. We know of no public policy demanding a reversal of their positions.

### IV. *Conclusion.*

We have considered all of the arguments advanced by Cynthia and her mother, whether discussed or not, and find them to be without merit. Accordingly, we affirm the judgment of the district court which granted priority to the claims of Haydon and Security Bank over the petitions for creditor's bill liens filed by Cynthia Garton and Alice Cockrell.

**AFFIRMED.**